**Erick J. Haynie**, OSB No. 982482
**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, Oregon 97223
Erick@timberlinelawgroup.com
541.386.6478

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DAVID W. MARKS**, an individual; and **B OF H, LLC**, an Oregon limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> **METRO**, a metropolitan service district; the **CITY OF LAKE OSWEGO**, an Oregon municipality; the **CITY OF WEST LINN**, an Oregon municipality; the **CITY OF TUALATIN**, an Oregon municipality; **CLACKAMAS COUNTY**, an Oregon county; and **ALLAN LAZO**, **STUART WARREN**, **BARBARA BOYER**, **MARK BENNETT**, **LIANNE THOMPSON** and **ELLEN PORTER**, with all individuals named in their official capacities as members of the Oregon Land Conservation and Development Commission, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT** <br><br> (Inverse Condemnation; Declaratory and Injunctive Relief; 42 U.S.C. § 1983) <br><br> **JURY TRIAL DEMANDED** |

1-   COMPLAINT

**INTRODUCTION**

David W. Marks ("Marks"), an advocate for and long-time resident of Clackamas County, and his wholly-owned holding company, B of H, LLC ("B of H") (together, "Plaintiffs"), bring this action against the City of Lake Oswego ("Lake Oswego"), the City of West Linn ("West Linn"), and the City of Tualatin ("Tualatin") (collectively, the "Cities"), as well as Clackamas County (the "County"), Metro, and the various commissioners (the "Commissioners") of the Oregon Land Conversation and Development Commission ("LCDC"). By this action, Plaintiffs seek inverse condemnation damages, as well as prospective injunctive and declaratory relief. The action relates to certain largely unimproved forestland owned and controlled by Plaintiffs located in the "Stafford" area of West Linn (Clackamas County), which property is defined below in this complaint as the "Property". The subject Property—along with other lands in the Portland metropolitan region—were in 2018 designated by LCDC as "urban reserve" following substantial process and appeals governed by Oregon law. That designation is material to the value and developability of the land at issue (and that of any similarly situated landowner). This is because, by Oregon state law, that designation is supposed to grant exclusive and priority status for inclusion within the urban growth boundary ("UGB") through periodic boundary expansions that are, by statutory charge, supposed to be managed and controlled by Metro.

Nonetheless, the Defendants—particularly Lake Oswego, West Linn and Tualatin—have strongly opposed the expansion of the UGB in the Stafford area for decades. This opposition is political in nature and stems from anti-development preferences inconsistent with local housing needs and published assessments. In furtherance of their preferences and as alleged further below, the Cities (with the capitulation of Metro and the County) have engaged in a series of extra-legal acts and omissions over time that have operated—by design—to cause extraordinary delay as concerns development of the Property, destroying in fact the priority status afforded by law to Plaintiffs' land as an urban reserve property. These acts include, for example, continued

2-   COMPLAINT

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR  97223
Phone:  541.386.6478

adherence to two "intergovernmental agreements" not passed through a democratic process and which contravene Oregon law. These agreements have operated over time to (i) indefinitely delay the Property's inclusion within the UGB; (ii) materially devalue the Property; and (iii) place the Property into a *de facto* "limbo" status rendering the Property more difficult to develop than had the Property not enjoyed urban reserve status at all. The intergovernmental agreements, referenced below as the "5-Party IGA"[1] and the "3-Party IGA,"[2] serve no legitimate government purpose, as they are in effect private laws that contravene public law. Additionally, the purpose and effect of these agreements, and Defendants' conduct since their execution, is to impose an indefinite delay on UGB expansion to include the Property.

Making matters even worse is that the Commissioners of LCDC—the division of the State of Oregon supposedly charged with responsibility for overseeing Metro and enforcing its UGB expansion obligations—have precluded Marks from challenging the legality of the 5-Party IGA and 3-Party IGA by refusing to process the petition for enforcement Marks filed pursuant to ORS 197.320(12). Specifically, LCDC initially dismissed Mark's February 2020 petition for enforcement on the grounds that LCDC lacked jurisdiction to review the IGAs because they supposedly are not land use decisions. Marks successfully appealed LCDC's dismissal to the Oregon Court of Appeals, who in September of 2023 reversed and remanded LCDC's decision on the grounds that the IGAs are land use decisions subject to LCDC's jurisdiction under ORS 197.320(12) pursuant to the "significant impacts test." The Oregon Court of Appeals concluded that the IGAs are land use decisions because they involve important issues of regional significance that will have substantial consequences for the future housing needs of the Metro region, specifically noting that "[w]hether or not the Stafford Area is urbanized will * * * have *very significant impacts*' on properties in the Stafford Area and failure to concept plan for urbanization would have

---

[1] As explained below, the parties to the "5-Party" IGA include Metro, the County and the Cities.

[2] As explained below, the parties to the "3-Party" IGA include the Cities. However, all the Defendants have been complicit with respect to both the 5-Party and 3-Party IGAs.

3-    COMPLAINT

'cascading effects' on other areas to be considered and the availability of housing for the Cities."[3] Despite issuance of that ruling in *September 2023*, the LCDC Commissioners excluded Marks from participating in the remand proceedings, adopted a tentative decision once again rejecting the petition for enforcement, and have refused (and continue to refuse) to adopt a final decision on remand more than 2.5 years (and counting) since being ordered by the Oregon Court of Appeals to do just that—for the purpose and result of preventing Marks from further appeal and depriving him of due process.  LCDC's failure to act on a remand as specifically directed by the Oregon Court of Appeals over 2.5 years ago is extraordinary, an affront to the rule of law in Oregon, and a denial of due process.

In short, Defendants' various acts and omissions, as alleged herein, have operated as a *de facto* stripping of the Property's lawful, priority "urban reserve" status.  As such, Defendants' actions constitute a taking in violation of the Fifth Amendment to the United States Constitution or, alternatively, Article I, Section 18 of the Oregon Constitution.  By this action, Plaintiffs seek money damages against the county and municipal defendants for the taking, and injunctive and declaratory relief against the various Commissioners of LCDC for their dereliction of duty.

## THE PARTIES

### 1.

Marks is a long-time resident of the State of Oregon, County of Clackamas.  Marks is committed to the well-being of Clackamas County, including the Stafford and Borland communities.  Marks brings this action in the public interest.

### 2.

B of H is an Oregon limited liability company wholly owned by Marks.  Marks (or a trust for which Marks is the trustee) is the sole member of B of H.  As a practical matter, Marks controls the entity.

---

[3] *Marks v. Land Conservation & Dev. Comm'n*, 327 Or. App. 708, 735, 536 P.3d 995, 1011 (2023) (emphasis added).

4-   COMPLAINT

**3.**

Metro is a metropolitan service district created pursuant to ORS Chapter 268.  Metro's jurisdiction covers approximately 24 cities and certain land within the boundaries of Multnomah, Clackamas and Washington Counties (the "Tri-County Area").  Metro is responsible for coordinating land use planning in the Tri-County Area.  One of Metro's primary responsibilities is the adoption of a regional UGB to ensure that the regional housing needs can be met (*see generally* ORS 268.380-268.390).

**4.**

Lake Oswego is a municipality within the State of Oregon, Clackamas County.

**5.**

West Linn is a municipality within the State of Oregon, Clackamas County.

**6.**

Tualatin is a municipality within the State of Oregon, Clackamas County.

**7.**

Clackamas County is a county government within the State of Oregon.

**8.**

LCDC is a division of the State of Oregon.  LCDC is charged by Oregon law with administrative oversight of Oregon's land use regulations, including enforcement responsibility over local governments and state agencies who fail to make land use decisions in compliance with statewide land use planning goals and regulations.  The various individuals named in this action are, as of the date of the filing of this action, LCDC Commissioners.  The Commissioners are sued in this matter in their official capacities.  By and through the Commissioners, LCDC provides policy direction for land use planning by the Oregon Department of Land Conservation and Development ("DLCD") and oversees DLCD operations.

5-   COMPLAINT

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR  97223
Phone:  541.386.6478

## JURISDICTION AND VENUE

### 9.

This Court has federal question jurisdiction in this case by operation of 28 USC § 1331 because Plaintiffs assert claims arising under the United States Constitution, enforceable at least through 42 USC § 1983 (civil action for deprivation of federal constitutional rights). As against Defendants Metro, Lake Oswego, West Linn, Tualatin and Clackamas County, Plaintiffs seek damages and related relief for a taking without just compensation. As against the Commissioners, Plaintiffs seek only prospective and declaratory relief.

### 10.

This Court has supplemental jurisdiction over related state-law inverse condemnation claims under 28 U.S.C. § 1367(a) because they are so related to the federal claims that they are part of the same case or controversy, arising from a common nucleus of operative fact.

### 11.

This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred within this District and the real property in question is located here.

### 12.

The United States District Court for the District of Oregon is a court of competent jurisdiction located within the State of Oregon.

## FACTUAL BACKGROUND

### *The Property*

### 13.

This action concerns approximately 24 acres of farmland located in and around 20395 Johnson Road in West Linn, Oregon (the "Property"). The Property is more specifically described as follows: "Parcel 2, PARTITION PLAT NO. 1994-183, in the County of Clackamas and State of Oregon." The Property is generally unimproved, although it contains a modest

6-   COMPLAINT

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR  97223
Phone:  541.386.6478

accessory structure.  The Property is located within an area of unincorporated Clackamas County generally known as "Stafford" within the "Stafford Triangle."  Based on its location within the Stafford Triangle, there is sufficient municipal water and sewer capacity to support development of the Property.

**14.**

Marks acquired the Property in or around 1995, and transferred it to B of H as a holding/investment entity in 2019 following the designation of the Property as an "urban reserve" property pursuant to LCDC's Compliance Acknowledgement Order 18-ACK-001894 dated March 16, 2018 (the "LCDC Acknowledgment Order").

**15.**

As discussed further below, LCDC issued the LCDC Acknowledgment Order in the wake of certain reforms passed by the Oregon Legislative Assembly, with the effect of the order being to specifically include the Property (and various other properties, including other Stafford Area[4] properties) as part of the "urban reserve."  As noted above, properties designated as "urban reserve" under Oregon law (ORS 195.137 to 195.145) are granted the highest priority for inclusion in the UGB when the UGB is expanded according to law.  "Urban reserve" lands are lands designated by Metro as "suitable for accommodating urban development," with the intent of providing "greater clarity regarding long-term expected uses of the land, allowing public and private landowners to make long-term investments with greater assurance."[5]

---

[4] In this Complaint, the term "Stafford Area" refers to the following areas referenced the LCDC Compliance Acknowledgment Order:  4A (Stafford), 4B (Rosemont), 4C (Borland) and 4D (Norwood).  The Property at issue in this action is located within the Stafford Area, and in particular area 4A (Stafford).

[5] *See* https://www.oregonmetro.gov/what-metro-does/land-use-and-development/2040-growth-concept/urban-and-rural-reserves.

7-   COMPLAINT

**16.**

Marks and B of H have reasonably relied on the "urban reserve" designated established by the LCDC Acknowledgment Order to hold the Property for development and investment purposes.

**17.**

According to Clackamas County, the assessed value of the Property is $52,829. According to Clackamas County, the market value of the Property (including improvements) is $1,457,302.

**18.**

But for Defendants' acts and omissions that have effectively deprived the Property of its "urban reserve" status (as alleged further below), the real market value of the Property would approach the value of undeveloped property located within the UGB of this area, which is approximately $14,500,000.  The actual market value of the Property, however, is a small fraction of this amount because, as a result of Defendants' various acts, omissions and extraordinary delays as set forth below, Defendants have in effect taken the Property's "urban reserve" status from Plaintiffs without just compensation (or any compensation at all), and have placed (and continue to place) the Property into a *de facto* "limbo" status that is worse than had the Property not been placed into "urban reserve" status at all.

### *The Property's Urban Reserve Status and Associated UGB Expansion Priority*

**19.**

The UGB in the Portland metro area, like that of other jurisdictions, is a legal status given to land to help facilitate planning, management and regulation of growth in urban areas by designating a clear boundary beyond which urban development is restricted or heavily regulated. Lands located within the UGB are generally much more valuable than properties located outside of a UGB given the substantially greater development potential of urban lands.

8-   COMPLAINT

**20.**

One of the primary responsibilities of Metro, as a metropolitan service district, is the adoption of a regional UGB to meet regional needs, including in particular housing supply and affordable housing (ORS 268.380-268.390). Metro is required to ensure the UGB has a 20-year supply of urbanizable land to meet projected residential, employment, and related land needs of the region (ORS 197.286 to 197.314). Metro must review the UGB every six years to ensure it continues to maintain this 20-year supply (ORS 197.299). If Metro determines the land supply is inadequate, it must expand the UGB or take other measures to ensure the need can be accommodated (ORS 197.296(6); 197.299(2)). In exercising its mandate to expand the UGB as appropriate, Metro must comply with a "Goal 14" process, which requires Metro to: (a) determine the need for expansion based on regional housing and economic needs for the next 20 years; (b) evaluate the urban reserve areas using certain specified Goal 14 boundary location factors; and (c) determine where to expand the UGB to meet the regional needs based on Goal 14 boundary factors. In short, one of Metro's primary responsibilities is the management of the regional UGB to ensure that the regional housing needs can be met within the UGB.

**21.**

As early as the late 1990's, Metro identified the Stafford Triangle and Borland areas as potentially valuable for development. Located squarely within the Portland-Metropolitan region, surrounded by three cities, bordered by two interstate freeways, hemmed in by existing UGB lands, and void of prime agricultural land or large farming operations that might cause conflict with urban or suburban development, these areas were originally included in Metro concept plans, including for needed housing and commercial space as the regions available, developable land supply dwindled. In fact, Metro concluded that the Stafford Area has unique characteristics that make it the most viable urban reserve areas for urban development in the entire Metro region: "There are no other areas in the region that provide a similar amount of nonfoundation farmland that

9-   COMPLAINT

are also surrounded on three sides by existing urban development and rank as highly as Stafford under the urban reserve factors."[6]

**22.**

In 2007, the Oregon Legislative Assembly adopted Senate Bill 1011 (ORS 195.137 to 195.145) to address several deficiencies in Metro's process for managing and expanding the UGB.  Senate Bill 1011 authorized the designation of urban and rural reserves to provide "greater certainty" to commerce, industry, private landowners, and public service providers by facilitating long-range planning for both urban and rural uses (ORS 195.139).  "Urban reserves" designated under ORS 195.145(1)(b) must be planned to accommodate the regional needs for a period of 40 to 50 years (ORS 195.145(4)).  Urban reserves are the highest priority for inclusion in the UGB when Metro expands the UGB (ORS 197.298; OAR 660-027-0070(1)).

**23.**

The urban reserve status is supposed to identify those areas most suitable for urban development, creating clarity for planners, investors, landowners, and service providers.  Under Oregon law, "urban reserves" are lands specifically designated "to accommodate population and employment growth" (ORS 195.145(4)).  This categorization is supposed to help everyone understand which areas are likely candidates for future urbanization and which are not.  Urban reserves designation is supposed to reduce the uncertainty and "limbo" that previously existed for landowners and local jurisdictions at the urban edge, for the purpose of improving the timing and coordination of future development.  As the Oregon Court of Appeals has noted, "For the next few decades, growth in the Portland metropolitan area will be guided by the designation of urban and rural reserve."[7]

---

[6] Metro Ordinance No. 16-1368, p.50.
[7] *Barkers Five, LLC v. Land Conservation & Dev. Comm'n*, 299 Or. App. 726, 729, 451 P.3d 627, 629–30 (2019).

10-  COMPLAINT

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR  97223
Phone:  541.386.6478

**24.**

The Oregon Legislative Assembly granted Metro with responsibility to administer the regional UGB because, in the words of the Oregon Court of Appeals, the Legislature "required Metro's unique regional perspective, rather than leaving adoption and administration of the UGB to the large number of cities and counties making up the metropolitan area."[8]

**25.**

Metro's process and procedures for planning new urban reserve areas is established by Metro's Regional Framework Plan (the "RFP"). *See* Metro Code ("MC") Chapter 3.07, Title 11. The RFP requires cities and counties to develop concept plans for future urban development of urban reserves areas "in conjunction with Metro" and requires the date for completion of the concept plans to be "jointly determined by Metro and the county and city or cities" (MC 3.07.1110(a)). If Metro and the city are unable to reach agreement on the date for completion of the concept plan, "the Metro Council may nonetheless add the area to the UGB if necessary to fulfill its responsibility under ORS 197.299 to ensure the UGB has sufficient capacity to accommodate forecasted growth" (MC 3.07.1110(e)).

**26.**

In 2010, and consistent with the mandate of Senate Bill 1011, Metro submitted its proposed urban and rural reserves for LCDC's review and acknowledgement, which specifically included the Stafford Area (and other areas) as part of the urban reserve. After a lengthy appeal of LCDC's original order, LCDC adopted Metro's urban and rural reserves through the March 16, 2018, LCDC Acknowledgment Order referenced above. Based on Metro's findings and evidence, LCDC concluded as follows in its order: "The Commission finds that Metro applies and evaluated each factor; weighed and balanced the factors as a whole, and provided a meaningful explanation of why it designated Areas 4A, 4B, 4C and 4D as urban reserve." Metro

---

[8] *See Marks v. LCDC*, 327 Or. App. 708, 712-13, 536 P.3d 995 (2023).

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

concluded that the Stafford Area has unique characteristics that make it the most viable urban reserve areas for urban development in the entire Metro region.

27.

The Stafford Area, which as noted includes the Property at issue in this action, is the largest urban reserve and accounts for over twenty-five percent (25%) of the overall urban reserves.

28.

Had Defendants not engaged in various acts and omissions not authorized by law, and not engaged in the various acts of extraordinary delay alleged below, the Property (and the entirety of the Stafford Area) would now be included within the UGB.

***Defendants' Obstruction and Delays***
***Divested Plaintiffs' Property of Bona Fide "Urban Reserve" Status***

29.

Defendants, all government agencies or actors, have engaged in a pattern and practice of decision-making and delay in violation of legal mandates requiring and/or prioritizing the expansion of the UGB to include the Stafford Area (including the Property).  These acts and omissions originate from the political preference among the Cities that the Stafford Area never be included within the UGB—with the remaining Defendants capitulating without legal basis. As Plaintiffs have discovered, these various acts and omissions have resulted in a *de facto* regulatory taking of the Property and/or its "urban reserve" priority status.  Each of the Defendants' acts and omissions have contributed substantially to the Property not being included within the UGB, despite entitlement as urban reserve property identified with priority by Metro, thereby destroying all economically viable uses for the Property and/or severely interfering with Plaintiff's reasonable, investment-backed expectations as a property owner in this area.

12-  COMPLAINT

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR  97223
Phone:  541.386.6478

**30.**

The acts and omissions of Metro, the Cities and the County operating to indefinitely and extraordinarily delay inclusion of the Property within the UGB, and effectively deprive Plaintiffs of the "urban reserve" designation, include each of the following:

A.     **5-Party IGA:** By and through that certain Intergovernmental Agreement Stafford Urban Reserve between the Cities, Metro, and the County, dated June 28, 2017 (hereinafter, the "5-Party IGA"), those parties purported to settle then-pending land use litigation over whether the Stafford Area should be included within the urban reserve. The 5-Party IGA is an intergovernmental agreement, agreed to by its parties outside of any democratic process, that purports to improperly grant to the Cities unilateral control over the timing and adoption of concept plans for the urbanization of the Stafford Area (including the Property). The 5-Party IGA is an unlawful agreement because (without limitation) it delegates to the Cities Metro's exclusive authority to determine when and how the UGB is expanded.

B.     **3-Party IGA**: By and through that certain Three City Intergovernmental Agreement Planning for the Stafford Urban Reserve, dated February 21, 2019 and executed by the Cities (hereinafter, the "3-Party IGA"), the Cities purported to unilaterally amend the 5-Party IGA in several ways, including by: (i) imposing a 10-year moratorium on the completion of a concept plan for an area north of the Tualatin River, which area includes the Property and is by far the largest portion of the Stafford Area;[9] (ii) prohibiting any of the Cities from completing a concept plan for any portion of the Stafford Area until an indefinite future event—design approval and funding of a widening project for I-205, a federal highway (the "I-205 Widening Project"); (iii) granting each City an effective veto right over

---

[9] The 10-year moratorium violates governing law, including without limitation MC 3.07.1110 and OAR 660-027-0070.

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR  97223
Phone:  541.386.6478

another City's adoption of a concept plan; (iv) imposing new criteria for the concept plans that are not in the 5-Party IGA or the RFP;[10] (v) providing preferential treatment for city-owned property in the Stafford Area; and (vi) purporting to bind Metro and the County with amendments to the 5-Party IGA even though Metro and the County are not party to the 3-Party IGA, and even though the 5-Party IGA contains a restrictive provision on amendments not approved by all signatories. Similar to the 5-Party IGA, the 3-Party IGA purports to grant the Cities exclusive authority over the process, timing and criteria of concept planning for the Stafford Area, thereby purporting to override by contract Metro's statutory charge to determine when and how the UGB is expanded.

C.    **Subsequent Conduct:** Since executing the 5-Party and 3-Party IGAs, Defendants have refused to rescind those agreements despite demand, and have also refused to engage with Plaintiffs (and similarly situated landowners) with respect to the "urban reserve" designation of the Property in accordance with law. Defendants have also intentionally refused to move forward with, and to obstruct, any progress by Metro or any other governmental agency with respect to the urbanization of the Stafford and Borland areas in accordance with law, causing extraordinary delay with respect to the inclusion of the Property within the UGB. Defendants have also compounded delays, and deprived Plaintiffs of due process, by refusing take final action on remand of the enforcement action notwithstanding the Oregon Court of Appeals' directive over 2.5 years ago. Defendants have engaged in a pattern and practice of behavior since the execution of the IGAs designed to result in the exclusion of Stafford and Borland for consideration for inclusion within in the UGB.

---

[10] The imposition of new criteria is in contravention of law, including without limitation MC 3.07.1110, OAR 660-027-0070 and OAR 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.

14-  COMPLAINT

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR  97223
Phone:  541.386.6478

**31.**

The I-205 Widening Project is estimated to cost $800,000,000 or more. The 3-Party IGA operates to delay indefinitely the inclusion of any portion of the Stafford Area in the UGB because, without limitation, the I-205 Widening Project has at all times material been in limbo due to political disputes and lack of funding by either the State of Oregon or the United States of America. By tying UGB expansion of the Stafford Area (including the Property) to funding and construction of a nine or ten figure unfunded state or federal highway project, the Cities—with intentionality, and through the instrumentality of contract—are eliminating or effectively eliminating the priority status granted by law to the Property as an "urban reserve" location.

### *Plaintiff's Enforcement Action*

**32.**

On or about February 6, 2020, Marks filed an enforcement action before LCDC. By and through the petition for enforcement (the "Petition for Enforcement"), Marks alleged that the Cities, Metro and the County had engaged in a pattern or practice of decision-making that violates the RFP with respect to concept planning for the Stafford Area "urban reserve" area (and other surrounding areas). By and through the Petition for Enforcement, Marks alleged (among other things) that the 5-Party IGA and the 3-Party IGA had a significant adverse impact on the Stafford Area. Additionally, Marks alleged that LCDC, which has enforcement authority over Metro's management of its UGB explanation obligations, ought to take enforcement action against Metro, the Cities and the County to nullify or amend these intergovernmental agreements to ensure that the concept planning processes for the Stafford Area are implemented in a manner consistent with governing law.

**33.**

Following LCDC's dismissal of the Petition for Enforcement on the grounds that LCDC lacked jurisdiction to review the IGAs, Marks appealed the matter to the Oregon Court of Appeals.

15-  COMPLAINT

**34.**

By opinion dated September 7, 2023, the Oregon Court of Appeals concluded that LCDC has jurisdiction to consider the Petition for Enforcement under the "significant impacts test" because the IGAs involve important issues of regional significance that will have substantial consequences for the future housing needs of the Metro region. The Court of Appeals further "reversed and remanded this case to LCDC for further consideration consistent with this opinion."[11]

**35.**

Since the September 7, 2023 decision from the Oregon Court of Appeals—which was over 2.5 years prior to the filing of this action—LCDC has yet to allow Marks to participate in any further hearing on remand, and has also failed to take any final action. Despite Marks' repeated requests to schedule a remand hearing, LCDC ignored those requests for 16 months. On January 24, 2025 LCDC conducted a remand meeting without providing Marks any opportunity to address the remand issues and tentatively denied the Petition for Enforcement without any discussion of the underlying substantive issues. Despite rendering a tentative decision well over a year ago, LCDC has continued to refuse to adopt a final order, thereby preventing Marks from appealing LCDC's new decision to the Oregon Court of Appeals. Marks has appeared, through counsel, at multiple LCDC meetings since the Court of Appeals' 2023 ruling requesting that LCDC adopt a final order, but LCDC repeatedly ignores Marks and refuses to take any final action. There is no excuse for LCDC's refusal to complete the decision-making process required by the law. LCDC's conduct, supported and assisted by the Defendants, leaves Plaintiffs without a meaningful enforcement remedy under state law.

---

[11] *See Marks v. Land Conservation & Dev. Comm'n*, 327 Or. App. 708, 739, 536 P.3d 995, 1013 (2023).

16- COMPLAINT

**36.**

The other Defendants have aided and assisted LCDC in its delays associated with the remand proceeding, refusing to request a hearing or to in any manner assist or further LCDC in addressing Mark's enforcement request.

### *Deprivation of Plaintiffs' Urban Reserve Designation*

**37.**

As a direct and proximate result of the 5-Party IGA, the 3-Party IGA, and the Commissioners' refusal to take action on remand for over 2.5 years despite the mandate of the Oregon Court of Appeals, the "urban reserve" status of the Property has as a practical matter been destroyed.  Despite governing legal mandates, the Property does not enjoy priority status for inclusion within the UGB, with Metro abrogating control over UGB expansion in the Stafford Area to municipalities who have opposed expanding the UGB to include the Property or any portion of the Stafford Area for decades.

**38.**

Plaintiffs had understood that Defendants were engaging in good faith with respect to the resolution of Plaintiffs' concerns through the LCDC petition for enforcement process.  However, following the substantial period of inaction by all Defendants following the Oregon Court of Appeals' remand in September of 2023, Plaintiffs have discovered that Defendants seek delays to indefinitely halt urbanization of the Stafford and Borland, with the effect that Defendants have effectively taken the "urban reserve" designation from Plaintiffs and the Property. Defendants' unreasonable delays and refusal to provide due process as concerns the "urban reserve" status of the Property constitutes a taking within the meaning of the constitutions of both the United States and the State of Oregon.

17-  COMPLAINT

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR  97223
Phone:  541.386.6478

**FIRST CLAIM FOR RELIEF**
**(Fifth Amendment Taking; 42 USC § 1983)**
**(Against Metro, the Cities and the County)**

**39.**

Plaintiffs re-allege and incorporate by reference all allegations set forth above as if fully alleged herein.

**40.**

As a direct and proximate result of their acts and omissions of delay as alleged above, Metro, the Cities and the County have taken from Plaintiffs, without just (or any) compensation, the rights and entitlements of an "urban reserve" property owner, with the result that Plaintiffs' property has been excluded from the UGB, and not treated as a bona fide "urban reserve" property, relegating the property to a "limbo" status indefinitely, and causing Plaintiffs' substantial economic loss.

**41.**

By agreeing to, performing, not rescinding and evading review of the 5-Party IGA, Metro, the Cities and the County have unreasonably and indefinitely delayed the inclusion of the Property (and all similarly situated properties in the Stafford Area) in the UGB.

**42.**

Additionally, by agreeing to, performing, not rescinding and evading review of the 3-Party IGA, the Cities have further unreasonably and indefinitely delayed the inclusion of the Property (and all similarly situated properties in the Stafford Area) in the UGB.

**43.**

Because the 3-Party IGA and 5-Party IGA have been executed and performed over the years in derogation of governing law, they advance no legitimate government interest and interfere with the reasonable investment-backed expectations of Plaintiffs (and all similarly situated landowners) as concerns lands properly designated as "urban reserve" under the March 16, 2018 LCDC Acknowledgment Order.  As private laws or regulations enacted by contract,

18-  COMPLAINT

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR  97223
Phone:  541.386.6478

rather than through a democratic process, the IGAs and their continued performance operate as an extra-legal regulations that impinge and/or eliminate Plaintiffs' property rights without just compensation.

**44.**

The adoption, terms and performance of the 5-Party IGA reflect the official policy, custom, and practice of Metro, the Cities and the County because each of those government agencies expressly agreed to the 5-Party IGA following deliberation and discussion with legal counsel.

**45.**

The adoption, terms and performance of the 3-Party IGA reflect the official policy, custom, and practice of the Cities because each of those government agencies expressly agreed to the 3-Party IGA following deliberation and discussion with legal counsel. Additionally, the 3-Party IGA reflects the official policy, custom and practice of Metro and the County because Metro and the County have acquiesced in and consented to the 3-Party IGA in the place of the 5-Party IGA.

**46.**

The defendants to this claim acted under color of state law, and their conduct has proximately caused Plaintiffs' damages.

**47.**

Defendants have also failed to provide Plaintiffs with due process as concerns review of the legality and propriety of the IGAs.

**48.**

The Property at issue here was acquired with a reasonable investment expectation that the Property would be treated by relevant government actors lawfully and in accordance with its attributes and status as a bona fide "urban reserve" property.

19- COMPLAINT

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

**49.**

Plaintiffs will prove their damages at trial, but currently estimate damages approaching $13,500,000 for the *de facto* loss of the "urban reserve" property designation and UGB priority status.

**50.**

Plaintiffs are entitled to reasonable costs and attorney fees in bringing this action under 42 USC § 1988.

**SECOND CLAIM FOR RELIEF**
**(Inverse Condemnation, Oregon Constitution)**
**(Against Metro, the Cities and the County)**

**51.**

Plaintiffs re-allege and incorporate by reference all allegations set forth above as if fully alleged herein.

**52.**

Alternatively, the acts and omissions of Metro, the Cities and the County, including without limitation the execution, adoption and performance of the 5-Party IGA and the 3-Party IGA, have deprived Plaintiffs of any economically viable use of the Property in violation of Article I, Section 18 of the Oregon Constitution.

**53.**

Plaintiffs are entitled to just compensation for the property rights taken by Defendants, and in such exact amount that Plaintiffs will prove at trial.

**54.**

Plaintiffs are entitled to their reasonable costs and attorney fees in bringing this action under ORS 20.085.

20-  COMPLAINT

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR  97223
Phone:  541.386.6478

**THIRD CLAIM FOR RELIEF**
**(Due Process Violations; 42 USC § 1983)**
**(By Marks Against the Commissioners of LCDC)**

**55.**

Plaintiffs re-allege and incorporate by reference all allegations set forth above as if fully alleged herein.

**56.**

Under the Fourteenth Amendment, a state or local government cannot "deprive any person of life, liberty, or property, without due process of law."

**57.**

Marks possesses a protected property interest in the timely processing of the Petition for Enforcement action in the Oregon state law system, consistent with governing law and the appellate mandate of the Oregon Court of Appeals in *Marks v. Land Conservation & Dev. Comm'n*, 327 Or. App. 708, 739, 536 P.3d 995, 1013 (2023) (the "Marks Enforcement Action").

**58.**

The Commissioners have deprived Plaintiffs of an opportunity to enforce Oregon land use laws by intentionally, and without any reasonable justification: (i) denying Plaintiff any opportunity to be heard in connection with remand proceedings in the Marks Enforcement Action; and (ii) and failing to take final action on remand as directed by the appellate mandate from the Oregon Court of Appeals despite the passage of 2.5 years.

**59.**

LCDC's failure to allow Marks to participate in remand proceedings, and failure to take final action after 2.5 years on remand, constitutes an unreasonable and extraordinary delay as concerns Marks' legitimate and bona fide real property interests.

**60.**

The actions of the Commissioners in failing to take final action after 2.5 years serves no legitimate government interest. This failure is intentional, arbitrary, and conscience shocking.

21- COMPLAINT

**61.**

LCDC's conduct, by and through its Commissioners, of exclusion and delay is wrongful and constitutes a violation of Marks' constitutional right to procedural and substantive due process.

**62.**

The Court should enter an order declaring that the Commissioners of LCDC have violated Marks' constitutional rights, and directing that the Commissioners issue a final decision on remand after allowing Marks to meaningfully participate in remand proceedings. The Court should further direct LCDC not to engage in any further acts of delay.

**63.**

Marks is entitled to reasonable costs and attorney fees in bringing this action under 42 USC § 1988.

**JURY DEMAND**

**64.**

Plaintiffs request a jury trial for all claims in this action so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A.    On their First and Second Claims for Relief, for a money judgment against Metro, the Cities and the County, jointly and severally, in the amount that will be established at trial;

B.    On the Third Claim for Relief, for a declaratory judgment and order as set forth in that claim;

C.    As to all claims, for an award of reasonable costs and attorney fees as allowed by 42 USC § 1988 or, alternatively, ORS 20.085.

D.    For such other relief as the Court may deem just and proper.

22- COMPLAINT

**Timberline Law Group, P.C.**
7128 SW Gonzaga, Suite 105
Portland, OR 97223
Phone: 541.386.6478

DATED:  April 15, 2026

**TIMBERLINE LAW GROUP, P.C.**

By: */s/ Erick J. Haynie*
     **Erick J. Haynie**, OSB No. 982482
     Erick@timberlinelawgroup.com
     7128 SW Gonzaga, Suite 105
     Portland, OR 97223
     Telephone:  541.386.6478

*Of Attorneys for Plaintiffs*

23-  COMPLAINT